UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OKECHUKWU UDUKO,                           Case No. 14-11041

           Plaintiff,                        Stephen J. Murphy, III
v.                                         United States District Judge

FRANK FINCH, GRADY, LARRY                  Stephanie Dawkins Davis
HUDDLESTON, and CODY MAYNARD               United States Magistrate Judge

           Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS BY ALL DEFENDANTS (Dkt. 47)**

## I.   PROCEDURAL HISTORY

Plaintiff, an inmate incarcerated by the Federal Bureau of Prisons, filed this civil rights action on March 10, 2014, against four defendants, in their individual capacities.  (Dkt. 1).  Plaintiff alleges claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the First and Fifth Amendments to the United States Constitution, and general civil conspiracy.  On March 19, 2014, this case was referred to Magistrate Judge Michael Hluchaniuk for all pretrial purposes by District Judge Stephen J. Murphy, III.  (Dkt. 6).  On January 5, 2016, the case was reassigned to the undersigned Magistrate Judge pursuant to Administrate Order.  Judge Murphy referred this matter to the undersigned for all pretrial proceedings on January 22, 2016.  (Dkt. 57).

1

On June 10, 2015, all defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's complaint in its entirety. (Dkt. 47). On July 27, 2015, plaintiff responded (Dkt. 52), and on August 24, 2015 all defendants filed a reply brief. (Dkt. 55).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss (Dkt. 47) be **GRANTED IN PART** and **DENIED IN PART.**

## II.    FACTUAL BACKGROUND

Plaintiff brings this complaint against numerous defendants, asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the First and Fifth Amendments to the United States Constitution, and general civil conspiracy. (Dkt. 1). The following facts are based solely on the allegations in plaintiff's complaint. *See Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011) (noting that in a motion to dismiss, the court "construe[s] the complaint in the light most favorable to the plaintiff," and "accept[s] all well-pleaded factual allegations as true.") (internal quotation marks and citation omitted).

In December 2010, plaintiff worked in the welding department at the Federal Correctional Institution at Milan. (Dkt. 1, ¶ 12). At this time, plaintiff was due for promotion from grade 2 to grade 1 based on his seniority and

2

excellence in work history. (*Id*.) On January 7, 2011, plaintiff was bypassed for a promotion after receiving a favorable evaluation, 23 out-of 25 score for the period of April to September 2010. (*Id*.) Plaintiff asked defendant Frank Finch, who was the foreman of the welding department within Federal Prison Industries, Inc. ("FPI" or "UNICOR"), why he had not been promoted and Finch replied: "You are a good worker in my shop but I don't know what you will do to become a grade 1 in my shop." (*Id*.) Upon further discussion, Finch again indicated that he did not believe that plaintiff would achieve a grade 1 status. (*Id*.)

On February 24, 2011, after not receiving a promotion, plaintiff asked Finch to provide a written letter indicating why he did not receive a grade 1 status. (*Id*. at ¶ 13). Finch indicated that he was not required to provide a written response and that the issue of promotion is a matter of supervisory discretion, that plaintiff was doing well and that in time promotion would be granted if Finch saw fit. (*Id*. at ¶ 14.)

On February 26, 2011, plaintiff approached Institutional Duty Officer ("IDO") Larry Huddleston complaining about being bypassed for the promotion in the welding department. (*Id*. at ¶ 15). Huddleston told plaintiff that he did not want to hear about the "grade issue" and asked why plaintiff had demanded a written response from Finch. (*Id*.) On February 28, 2016, plaintiff delivered an inmate request to Huddleston informing him of the circumstances surrounding his

being bypassed for the welding promotion and requesting a prompt answer to his

concerns. (*Id*.) Huddleston told plaintiff that he did not want to hear about his

grade issue and that he would reassign him to somewhere else in the compound if

he had to answer the complaint. (*Id*. at ¶ 16). Huddleston never answered

plaintiff's complaint against Finch regarding the promotion. (*Id*.) Because of

Huddleston's lack of response, plaintiff filed a grievance against defendants Finch

and Huddleston on March 13, 2011 requesting a grade change from level two to

one. (*Id*. at ¶ 17). Three grade 1 openings became available since December 2010

and Finch knowingly, intentionally, willfully, and with a retaliatory animus chose

to discriminate against plaintiff for no reason or justification but for plaintiff's

filing a grievance against staff seeking redress. (*Id*.)

Because of plaintiff's actions, on March 16, 2011, Huddleston wrote a

retaliatory and discriminatory disciplinary warning against plaintiff. (*Id*. at ¶ 18).

The disciplinary warning indicated that plaintiff was inside the general foreman's

office when he should not have been there and that if it happens again it will lead

to a grade loss or termination from Unicor work detail. (*Id*.) Plaintiff told

Huddleston that he believed that the disciplinary write-up was retaliatory in nature

and an overt act in furtherance of the formed conspiracy. (*Id*.) Plaintiff filed a

grievance regarding the disciplinary warning on March 22, 2011 and fully

exhausted his appeals on October 4, 2011. (*Id*.)

4

Also because of plaintiff's actions, on March 21, 2011, Finch, as an overt act of the conspiracy, retaliated and discriminated against plaintiff by giving plaintiff an average performance rating of fifteen (15) and asked plaintiff to sign the evaluation paper.  (*Id.* at ¶ 19).  Plaintiff refused to sign the paper because he did not believe that it reflected his work performance.  (*Id.*)  Plaintiff's evaluation prior to the promotion issue was a twenty-three (23) with a comment that plaintiff was a dependable worker.  (*Id.*)  Plaintiff filed an administrative grievance regarding the average evaluation on March 27, 2011, and March 31, 2011, and fully exhausted it on August 10, 2011.  (*Id.*)

On March 22, 2011, and in furtherance of the conspiracy, defendant Finch wrote a retaliatory and discriminatory disciplinary warning to terminate plaintiff's Unicor job.  Plaintiff was asked to perform a task and Finch deemed it to be of substandard performance.  As a result, Finch decided that he was going to start writing plaintiff up for substandard work and handed plaintiff a disciplinary warning that he wanted plaintiff to sign.  (*Id.* at ¶ 20).  Plaintiff refused to sign the warning because he felt that Finch was just building a negative record to use to terminate him from his Unicor job.  (*Id.*)  Plaintiff filed an administrative grievance regarding the disciplinary warning on March 31, 2011, which was exhausted on October 4, 2011.  (*Id.*)

On August 24, 2011, Finch removed plaintiff from the overtime list for the

5

welding department as a retaliatory and discriminatory response and as an overt act of the formed conspiracy between Finch and Huddleston to have plaintiff terminated from his Unicor work detail. (*Id*. at ¶ 21). Plaintiff asked to be put back on the overtime list, however, Finch denied this request. (*Id*.) Plaintiff also indicates that Finch asked plaintiff to sign a document regarding the matter, but plaintiff refused to sign it because plaintiff believed that it was retaliatory and discriminatory in nature. (*Id*.) From August 25, 2011 until September 6, 2011, plaintiff was removed from the general population to a special housing unit and was quarantined for medical reasons despite the fact that plaintiff could have been housed in the health services department. (*Id*.) Plaintiff alleges that his placement was for discriminatory and retaliatory purposes. (*Id*.) While in the special housing unit, plaintiff did not have access to his property including his legal materials and did not have access to the law library. (*Id*.) Plaintiff did not regain access to his materials until September 11, 2011. (*Id*.) On September 14, 2011, plaintiff submitted an administrative grievance regarding the overtime issue. (*Id*.) Plaintiff asserts that this grievance has been exhausted. (*Id*. at ¶ 22).

On September 9, 2011, Finch and another Unicor foreman, Mr. Witter, told plaintiff that his grade level was being reduced from grade 2 to grade 3, and that he was not longer a participant in the welding apprenticeship program. (*Id*. at ¶ 24). Finch's supervisors approved these recommendations. (*Id*.) Finch then

asked plaintiff to sign the form, but plaintiff refused and instead filed a grievance regarding his removal from the welding apprenticeship program and his grade reduction from a level 2 to a level 3. (*Id*.) This grievance was against Finch, Huddleston, and defendants Cody Maynard (general foreman at UNICOR) and Brannon Grady (Superintendent of Industries at UNICOR) for their participation in plaintiff's removal from the welding apprenticeship program and the reduction of plaintiff's grade from a level 2 to a level 3. (*Id*.) Plaintiff alleges that defendants Huddleston, Maynard, and Grady implicitly authorized, approved, supported, condoned, or knowingly acquiesced in Finch's unconstitutional conduct. (*Id*. at ¶ 25).

In retaliation for plaintiff's above actions, on October 3, 2011, Finch gave plaintiff a poor evaluation for the period of April to September 2011. (*Id*. at ¶ 26). Finch rated plaintiff's performance to be a fourteen (14) and when plaintiff refused to sign the evaulation form, Finch reduced the evaluation score to thirteen (13). (*Id*.) Plaintiff, again, was forced to file an administrative grievance regarding the poor evaluation report. (*Id*.)

On October 19, 2011, Finch told plaintiff to meet him at the general foreman's office. Inside the office, defendant Maynard told plaintiff that Finch had initiated a disciplinary action against plaintiff and requested that plaintiff be terminated from Unicor work detail because Finch observed plaintiff having a

7

non-Unicor related discussion with another inmate from another department during work time. (*Id*. at ¶ 27). Plaintiff avers that all defendants acted together in Finch's retaliatory and discriminatory response against plaintiff when he exercised his constitutionally protected right of access to the courts by filing his grievances against defendants Finch, Maynard, Huddleston and Grady, seeking redress, and was terminated him from his Unicor job. (*Id*.)

On November 3, 2011, plaintiff wrote to Warden J.S. Walton about his concerns that his job had been terminated based on a retaliatory and discriminatory response for exercising his rights. (*Id*. at ¶ 27). On November 14, 2011, plaintiff's termination was overturned and he was assigned to the PM press detail, where he received a grade level 1, and good evaluation reports of 23, 24, and 25. (*Id*.) Plaintiff has also participated in Unicor training programs. On October 31, 2011, plaintiff started the administrative grievance process regarding his termination from Unicor work detail and fully exhausted this grievance on August 9, 2012. (*Id*.) Plaintiff claims that inmates Ross Eggleston and Gregory Rippie told him that it has been agreed by them and Finch that plaintiff would never achieve a grade level 1 in the welding department as long as they were in the welding department because plaintiff was filing grievances against Finch. Plaintiff avers that this statement by inmates Eggleston and Rippie took place in the welding department on February 24, 2011, and was repeated on March 1,

2011, and March 16, 2011.

## III.   PARTIES' ARGUMENTS

### A.   Finch, Huddleston, Maynard and Grady's Motion to Dismiss

Defendants move under Fed. R. Civ. P. 12(b)(6) asking the court to dismiss plaintiff's complaint in its entirety because plaintiff has failed to state a claim against the individual defendants.  First, defendants claim that the complaint is frivolous.  (Dkt. 47, at Pg. ID 311-312).  Defendants say that plaintiff's complaint is unorganized, inconsistent, repetitive, vague and confusing.  These factors alone, defendants argue, is enough to warrant dismissal of the action under 42 U.S.C. § 1997e(c)(1).

Second, defendants argue that plaintiff's conspiracy claim (Claim 1) fails to state a claim as it is conclusory and lacks factual support.  (Dkt. 47, Pg ID 312-315).  At best, plaintiff attempts to allege circumstantial evidence to support his conspiracy claim; however, this is insufficient to support the allegation of an agreement.  More specifically, parallel conduct, by itself, is insufficient to establish a civil conspiracy.  Additionally, an allegation of a civil conspiracy "must be coupled with a substantive theory of liability in order to sustain a cause of action."  *Mohammed v. Union Carbide Corp.*, 606 F. Supp. 252, 257 (E.D. Mich. 1985) (*citing Earp v. City of Detroit*, 167 N.W.2d 841, 845 (Mich. Ct. App. 1969)).  Moreover, defendants allege that the intracorporate conspiracy doctrine

9

provides that "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Third, defendants say that plaintiff's retaliation and discrimination claims (Claims 2 - 7) should be dismissed because the claims do not show a violation of a constitutional right and do not show that any right was clearly established at the time of the alleged misconduct – therefore, defendants are entitled to qualified immunity.  Plaintiff alleges discrimination that violated his Fifth Amendment rights, but does not specify whether he is referring to a Due Process violation or an Equal Protection violation.  Defendants claim that because prisoners have no constitutionally protected property or liberty interest in a prison work assignment, plaintiff has failed to state a claim under *Bivens* for a deprivation of due process under the Fifth Amendment in his discrimination claims (Claims 2 - 7) of the complaint.  Likewise, defendants argue, to the extent plaintiff is claiming that defendants violated his equal protection rights, that claim also fails because plaintiff failed to show that he was treated differently than any similarly-situated individuals.  If the court finds that a constitutional violation existed, defendants argue that it would not be reasonable for a BOP employee to understand that his or her conduct was unlawful.  In fact, the documented evidence of plaintiff's poor

10

work performance supports the reasonable and lawful actions by defendants.  For all of these reasons, defendants say they are entitled to qualified immunity on the discrimination claims.

Defendants argue that they are also entitled to qualified immunity on plaintiff's retaliation claims.  (Dkt. 47, Pg ID 323-329).  Defendants say that the retaliation claims do not show that the right at issue was "clearly established" at the time of the alleged misconduct, therefore the retaliation claims (Claims 2 - 7) of the complaint should be dismissed.  Defendants concede "for purposes of argument" that seeking redress through administrative remedies is protected conduct, and that plaintiff experienced a wide-range of adverse actions (e.g., removal from the apprenticeship program, overtime list, and welding department, and other allegedly adverse actions related to his pay grade level and evaluation within the FPI program).  But, defendants argue that plaintiff has failed to establish the requisite causal link between the alleged constitutionally protected conduct and the adverse actions and fails to establish that the adverse actions would deter a person of ordinary firmness from continuing to engage in that conduct.  Defendants claim that temporal proximity coupled with a few statements from defendants is insufficient to establish a causal connection.  The language by Finch, at most, establishes that he was contemplating exercising his discretionary ability to discipline plaintiff based on his poor performance.  Therefore, the

11

retaliation component of Claims #3 - 7 all of which are only against Finch, should

be dismissed because there is no causal connection.  With respect to the language

by Huddleston, defendants say it is too vague and does not establish a causal

connection between plaintiff's protected conduct and the false disciplinary report,

i.e., the alleged adverse action in the retaliation component of Claim 2.

Defendants also argue that the purported language by Huddleston merely

establishes that he does not want to answer plaintiff's questions, particularly

where there is evidence that plaintiff's work performance deteriorated

significantly from September 2010 to September 2011.  And, even if it is

determined that Huddleston's language is interpreted to mean that he wanted to

transfer plaintiff, plaintiff has not shown that Huddleston had the authority to

transfer an inmate, nor has he shown that such a transfer was inappropriate.

Defendants alternatively claim that plaintiff has failed to establish that an adverse

action taken against him would deter a person of ordinary firmness from

continuing to engage in the conduct.  Here, plaintiff presents evidence that he is a

prolific grievance filer, which undermines his retaliation claim (because he was

not deterred) and therefore leaves him unable to state a retaliation claim.  *See*

*Halpin v. Crist*, 405 Fed. Appx. 403, 407 (11th Cir. 2010) ("[t]o the extent that

[the plaintiff] argues that he was unable to file grievances for fear of retaliation,

his argument is severely undermined by the record of multiple unrelated

grievances he filed, both before and after the alleged incident giving rise to the fear of reprisal.").  Moreover, defendants contends that given the vague and irrelevant language purportedly used by defendants, plaintiff's limited first amendment rights, defendants' discretionary ability to enact sanctions and write-ups, and documented evidence of plaintiff's poor work performance, it would not be clear to a reasonable BOP employee that his or her conduct was unlawful. Therefore, defendants did not violate any clearly established constitutional right and plaintiff's retaliation claims (Claims 2 - 7) should be dismissed.

Defendants also state additional, independent reasons that some of the claims can be dismissed.  (Dkt. 47, Pg ID 329-332).  Defendants claim that some of plaintiff's retaliation and discrimination claims do not allege constitutional violations.  For instance, in Claims 5, 6, and 7, defendants say that Maynard, Huddleston and Grady should be dismissed because the "adverse action" in these claims was allegedly taken by Finch, not the other three defendants.  To hold the other three defendants liable simply because Finch's acts were "authorized, approved, encouraged, condoned, and supported" by Maynard, Huddleston and Grady contradicts Sixth Circuit precedent that a plaintiff may only sue a particular defendant for their own acts, and not the actions of others.  *Heyne*, 655 F.3d at 564.  Also, because the only claims that mention Huddleston in the "adverse action" description are Claims 2, 5, 6 and 7, he should only remain a defendant in

Claim 2. Also, because the only claims that mention Maynard and Grady in the "adverse action" description are Claims 5, 6, and 7, Maynard and Grady should be dismissed.

Defendants also argue that the Prison Litigation Reform Act requires inmates to exhaust all available administrative remedies prior to filing an action in federal district court. (Dkt. 47, Pg ID 332-334); 42 U.S.C. § 1997e(a). Defendants assert that any claim relating to the alleged August 24, 2011 false disciplinary report by Finch in Claim 4 should be dismissed because plaintiff did not address this allegation in any administrative remedy. Moreover, defendants argue that Maynard, Huddleston and Grady should be dismissed as defendants in Claims 5, 6, and 7 because they were not identified as the alleged actor in any of the relevant administrative remedies on those claims, only Finch was mentioned.

### B. Uduko's Response

Plaintiff first argues that his complaint is not frivolous or malicious. (Dkt. 52, Pg ID 368-370). Here, the complaint relies on plaintiff's right to be free from retaliation, discrimination and conspiratorial agreement with inmate coconspirators by prison officials. The complaint is also not filed with the intention or desire to harm another. Rather, the complaint is seeking redress from the wrongs visited upon him by prison officials. For these reasons, plaintiff asks the court to find that his complaint is not frivolous or malicious. Plaintiff also

14

reminds the court that he is acting pro se and that his complaint is to be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972).

Plaintiff further argues that his complaint complies with the pleading requirements of Fed. R. Civ. P. 8. Plaintiff contends that his verified complaint adequately gave defendants fair notice of the claims and the grounds upon which they rested.

Plaintiff argues that he has stated a viable civil conspiracy claim. (Dkt. 52, Pg ID 371-379). Plaintiff also rejects defendants' alternative theories of how his conspiracy claim fails. First, plaintiff says that defendants' theory that he must couple his conspiracy theory with a substantive theory of liability is meritless as it places a heightened pleading requirement on him. Plaintiff also rejects defendants' theory that they are immune from civil conspiracy liability based on the intra-corporate conspiracy doctrine. Plaintiff avers that defendants cannot take advantage of this theory because the violation of a person's constitutional rights can never be undertaken within the scope of a person's employment. Plaintiff also denies that an exception to the intra-corporate conspiracy doctrine exists in this case.

Plaintiff next argues that defendants are not entitled to qualified immunity. (Dkt. 52, Pg ID 379-395). Plaintiff points out that he has not yet had an opportunity to initiate discovery which would assist in developing a factual record

on which this court can determine whether dismissal on qualified immunity is proper. Here, the standard for a 12(b)(6) motion is whether the allegations, if taken as true, state a claim on which relief can be granted and shows that defendants were put on notice by clearly established law that their conduct violated plaintiff's protected rights.

Plaintiff additionally contends that he has alleged constitutional claims under *Bivens* against all defendants. (Dkt. 52, Pg ID 395-396). Plaintiff avers that defendants Maynard, Huddleston and Grady are not entitled to dismissal on Claims 5, 6, and 7 because they participated in the adverse actions when they authorized, approved, encouraged, condoned, supported, and knowingly acquiesced in defendant Finch's unconstitutional conduct. *See e.g.*, *Cook v. Martin*, 148 Fed. Appx. 327 (6th Cir. 2005). Plaintiff also argues that defendants Maynard, Huddleston and Grady are liable under the "Cat's-Paw" theory of liability because their acts were the proximate cause of the ultimate adverse action that plaintiff suffered. *See e.g.*, *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666 (6th Cir. 2008).

Plaintiff finally claims that he exhausted his administrative remedies and that defendants have failed to carry their burden of persuasion on this point. (Dkt. 52, Pg ID 396-401). Plaintiff specifically states that defendants Maynard, Huddleston and Grady are proper defendants in Claims 5, 6 and 7 as those claims

16

have been administratively exhausted as to them.

C.    Defendants' Reply

Defendants repeat that plaintiff's complaint should be dismissed because it is frivolous and confusing. (Dkt. 55, Pg ID 475-476). Defendants say that the complaint includes multiple examples of repetition, vagueness and inaccuracy.

Defendants argue that the conspiracy claim fails to state a claim. (*Id*. at Pg ID 477-479). Defendants contend that plaintiff's complaint is conclusory and without factual support. In addition, defendants contend that plaintiff ignores that circumstantial evidence is insufficient to establish an agreement. Further, defendants aver that plaintiff has failed to allege facts that defendants have acted outside the scope of their employment relationship.

Defendants also say that plaintiff fails to allege a violation of constitutional rights. (Dkt. 55, Pg ID 479-480). Defendants further contend that they did not violate a clearly established constitutional right. (*Id*. at Pg ID 480-481). The second prong of the qualified immunity test is whether a right is clearly established, and the test is fact-specific. Defendants argue that plaintiff misstates the law in his response and attempts to remove the case-specific inquiry. Defendants also claim that some of plaintiff's claims do not allege *Bivens* claims against some defendants. (*Id*. at Pg ID 482-483). According to the defendants, plaintiff provides no factual allegations or discussion to explain how defendants

17

"authorized, approved, encouraged, condoned, supported, and knowingly acquiesced in defendant Finch's unconstitutional conduct" or how their acts are "a proximate cause of the ultimate adverse actions that plaintiff suffered." (*Id*. at Pg ID 482). Defendants also contend that plaintiff should have listed Maynard, Huddleston, and Grady in order to exhaust his administrative grievances, and, because he failed to identify them, certain dismissals are required. (*Id*. at Pg ID 483-485).

## IV.    LEGAL ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Supreme Court has raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson* that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s]

18

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, *2.

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D. Mich. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999)).  Thus, the Court must still read plaintiff's pro se complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

19

(The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the pro se complaint at issue.).

    B.    <u>Legal Analysis</u>

        1.    Rule 8 Standard

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court applied *Twombly* in a prisoner civil rights lawsuit in *Erickson*, 551 U.S. at 127.  That Court reiterated that a plaintiff is not required to plead specific facts; instead, the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Erickson*, 551 U.S. at 93 (citation omitted).  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  *Id*.

Defendants argue that plaintiff's 21-page "statement of facts" and 30 pages "listing seven claims" is unorganized, inconsistent, repetitive, vague and confusing, and thus fails to meet the pleading requirements of the Federal Rules. The undersigned acknowledges that when a pleading is so verbose that neither the court nor the defendants can readily identify the claims asserted, the complaint should be dismissed for failure to comply with the Federal Rules of Civil Procedure.  *See e.g.*, *Flayter v. Wisconsin Dep't of Corrs*., 16 Fed. Appx. 507, 509

(7th Cir. 2001). However, the undersigned finds that while plaintiff's complaint is lengthy and repetitious, on review of the complaint as a whole and considering the undersigned's obligation to read plaintiff's *pro se* complaint indulgently, plaintiff's complaint is not confusing or unreasonably prolix. Rather, the complaint contains a chronological, detailed statement of facts followed by seven separate causes of action (acknowledged by defendants), each listing the elements of the claims asserted and the facts supporting each element of the claim. The court notes that plaintiff has specifically labeled each of his causes of action giving further notice to defendants of the claims alleged. Plaintiff's complaint thus gives fair notice of the claims asserted and the grounds upon which each of the claims rests. The complaint, therefore, does not violate Rule 8(a)(2), and should not be dismissed on this basis.

### 2.   Civil Conspiracy

To state a claim for a *Bivens* conspiracy, plaintiff must allege an agreement between two or more persons to act in concert to deprive a person of his constitutional rights, and an overt act done in furtherance of that goal, causing damages. *See Fuller v. Shartle*, 2012 WL 1068805, at *5 (N.D. Ohio Mar. 29, 2012) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985) (addressing a § 1983 conspiracy claim)). Express agreement among all the conspirators is not necessary to find the existence of a conspiracy. *Id.* Conspiracy claims must be

pled with a degree of specificity.  *Id.* (citing *Hamilton v. City of Romulus*, 409 Fed.

Appx. 826, 835-36 (6th Cir. 2010), *cert. denied*, --- U.S. ---, 131 S. Ct. 2934

(2011)).  While vague and conclusory allegations unsupported by material facts

are insufficient, circumstantial evidence of an agreement among all conspirators

may provide adequate proof.

    Here, plaintiff alleges that all defendants conspired together with two

inmates Eggleston and Rippie sometime on or before February 24, 2011 until

October 19, 2011 to deprive him of a promotion in the welding program from

grade level 2 to grade level 1, and to terminate plaintiff's Unicor job assignment

on October 19, 2011.  Plaintiff also alleges that the co-conspirators created false

and negative documentation in the form of disciplinary warning reports by

Huddleston and Finch, removing him from the welding apprenticeship program,

further grade reductions from grade level 2 to grade level 3, and removal from the

overtime list.

    The undersigned finds that the facts pled in plaintiff's complaint do not

support the existence of an agreement and concerted action sufficient to violate

plaintiff's constitutional rights.  Plaintiff simply alleges a series of distinct acts

committed by different defendants and attempts to lump those acts together in an

alleged conspiracy to "conspire and agree with each other upon a single plan to

injure plaintiff....".   However, mere conclusory allegations of conspiracy (i.e., a

bare allegation that defendants "conspired" with one another) are insufficient to state a claim. *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir.1997). And, it is insufficient to allege that "the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Novellino v. N.J. Dep't of Corr. Mountainview Youth*, 2011 WL 3418201, at *15 (D. N.J. Aug. 3, 2011) (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997)). Rather, a plaintiff must allege "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights [.]" *Harris*, 126 F.3d at 1196. The undersigned concludes that plaintiff has failed to do so here, therefore the undersigned concludes that Claim 1 fails to state a claim for a *Bivens* conspiracy and recommends that it should be dismissed.

### 3.    Failure to Exhaust

Defendants also argue that plaintiff failed to exhaust his administrative remedies by not listing some of the defendants in his administrative grievances. Specifically, defendants argue that Maynard, Huddleston, and Grady should be dismissed because plaintiff failed to identify them as actors in the grievances relating to Claims 5, 6 and 7. Moreover, defendants say that plaintiff never addressed the false disciplinary claim alleged in Claim 4 in the grievance process.

The Prison Litigation Reform Act (PLRA) of 1996 requires that a prisoner

exhaust all administrative remedies before filing a § 1983 action.  Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  It is well-settled that, under this statute, the proper exhaustion of available administrative remedies, while not jurisdictional, is a mandatory pre-condition to the filing of an action in federal court challenging prison conditions.  *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006).  In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...."  *Id.*, 548 U.S. at 90.  Consequently, whether a claim is "properly exhausted" under the PLRA requires a court to examine the particular institution's administrative rules and regulations regarding prisoner grievances.[1]

However, *"inmates are not required to specifically plead or demonstrate exhaustion in their complaints."*  *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910,

---

[1]  The BOP has a four-step administrative process for resolving inmate grievances:  (1) at the first step, the inmate is required to "present an issue of concern informally to staff...."  28 C.F.R. § 542.13; (2) if the grievance is not resolved to the inmate's satisfaction, he or she may then file a written Administrative Remedy Request within 20 days of the date the basis for the Request occurred. 28 C.F.R. § 542.14; (3) if still not satisfied, the inmate may submit a written appeal to the appropriate Regional Director within 20 days of when the Warden signed the step two response. 28 C.F.R. § 542.15; (4) the final step in the administrative process is a written appeal to the General Counsel within 30 days of the Regional Director's response.  *Id.*

24

166 L Ed. 2d 798 (2007).  The *Jones* Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process.  *Id.* Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  *Id.*; *see also Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants ."). A moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden - the plaintiff on a claim for relief of the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.

Here, defendants first argue that the alleged August 24, 2011 false disciplinary report authored by Finch (in Claim 4) should be dismissed because it

was never the subject of an administrative grievance process.  However, there is

evidence in the record that suggests otherwise.  For example, in administrative

grievance case number 657126-A1, plaintiff indicates that "the false disciplinary

warning of August 24, 2011 was addressed in case number: 657122-F1 and case

number 657122-F2."  (Dkt. 52, Pg ID 404).  The court, however, is unable to

locate either of the administrative grievances noted by plaintiff, either attached to

the complaint, or as an exhibit to defendants' motion to dismiss.  As such, because

defendants failed to carry their burden of persuasion that plaintiff failed to exhaust

his administrative remedies, the court concludes that dismissal is not appropriate

on these grounds.

Defendants also argue that Maynard, Huddleston and Grady should be

dismissed in Claims 5, 6, and 7 because they were not properly identified in the

administrative grievance process as alleged "bad actors."  Rather, according to

defendants, Finch was the only one named in the grievances that relate to Claims

5, 6, and 7, thus not providing adequate notice to Maynard, Huddleston and Grady.

In Claim 5, plaintiff alleges that defendant Finch took three adverse actions

(that were authorized and/or approved by defendants Maynard, Huddleston and

Grady) including writing a false incident report on 9/8/11, by initiating and

removing plaintiff from the Unicor Welding Apprenticeship Program, and by

reducing plaintiff's grade from a grade level 2 to grade level 3.  (Dkt. 1, at Pg ID

48-49). According to defendants, the grievances that correspond to the allegations in Claim 5 are case numbers 657126 and 657130. (Dkt. 52, Pg ID 404-409, 423-432). However, in grievance case number 657126, plaintiff alleges that "the disciplinary action initiated against [him] by Frank Finch and approved by Cody Maynard, Larry Huddleston, and B. Grady was a retaliatory and discriminatory response against [him] ..." (Dkt. 52, Pg ID 404). As such, with respect to Claim 5, the court concludes that plaintiff properly put defendants Maynard, Huddleston and Grady on notice that they were involved in the matter being grieved.

With respect to Claim 6, plaintiff alleges that defendant Finch took an adverse action on October 3, 2011 (that was authorized and/or approved by defendants Maynard, Huddleston and Grady) by giving him a poor evaluation report. (Dkt. 1, Pg ID 52-53). Defendants identify administrative grievance case number 659992 as relevant to Claim 6. (Dkt. 52, Pg ID 433-441). However, in that grievance, plaintiff alleges that the adverse action was taken by Finch who conspired with "other staff member(s)" as a "response to the lawsuit [he] filed against staff members and because of the grievances [he] filed against [Finch] and Mr. Huddleston." (*Id*. at 436). As a result, with respect to Claim 6, the court concludes that the administrative grievance sufficiently put Maynard, Huddleston and Grady on notice that they were involved in the matter.

Finally, with respect to Claim 7, plaintiff claims that Finch took two adverse

27

actions against him (that were authorized and/or approved by Maynard, Huddleston and Grady) by depriving him of a promotion from grade level 2 to grade level 1 from March 2011 until October 19, 2011, and by terminating plaintiff's Unicor job assignment on October 19, 2011. (Dkt. 1, Pg ID 56-57). Defendants claim that the administrative grievances that cover these claims are case numbers 630574 and 663545. (Dkt. 52, Pg ID 410-420, 445-458). In case number 630574, plaintiff specifically identifies Finch, Huddleston and other staff in describing his grievances. Further, in case number 663545, plaintiff specifically identifies Finch, Maynard, Huddleston, and Grady as being involved in the behavior at issue. (Dkt. 52, Pg ID 413). For these reasons, with respect to Claim 7, the court again concludes that plaintiff sufficiently put defendants on notice with his administrative grievances.

The undersigned also notes that plaintiff's step one grievances were not rejected as unduly vague or for a failure to identify specific individuals. Furthermore, it appears that respondent has addressed the grievances on the merits. Nothing in *Jones* or *Woodford* altered the well-established principle that when the merits of a grievance are addressed, any claimed procedural defect not raised during the administrative process is waived and cannot form the basis of a failure to exhaust defense. *See Contor v. Caruso*, 2008 WL 878665, *8 (W.D. Mich. 2008) (Prison officials cannot rely on the procedural rule barring review of

28

a grievance where the grievance was not rejected at any step of the process for failure to identify specific CMS personnel). Under the PLRA and *Woodford*, "both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court." *Id.* at *7. If the Court accepted defendants' position, a prisoner would never have notice that his grievance did not comply with the grievance procedure. Further, accepting defendants' position would place the burden of raising an objection only on a prisoner and not on the persons administering the grievance process. This interpretation is inconsistent with the exhaustion doctrine and the purpose of the PLRA: "[w]hen prison officials fail to raise procedural problems during the grievance process, too many suits make it to federal courts on a record where the procedural problem has not been adequately developed." *Id.* at *7. For all of these reasons, the undersigned recommends that defendants' claim that plaintiff failed to exhaust his administrative grievances be denied.

### 4.    Supervisory Liability

Defendants additionally claim that plaintiff cannot sustain a *Bivens* action against defendants Maynard, Huddleston, and Grady in Claims 5, 6 and 7 because the "Adverse Action" in these claims was allegedly taken by Finch and not Maynard, Huddleston, and Grady. Defendants claim that to make these defendants liable based on conclusory allegations that Finch's acts were "authorized,

29

approved, encouraged, condoned, and supported" by these defendants would contravene Sixth Circuit precedent that "we cannot ascribe the acts of all individual defendants to each individual defendant." *See Heyne v. Metro Nashville Pub. Schs*., 655 F.3d 556, 564 (6th Cir. 2011). Defendants claim that plaintiff simply has not plead with the requisite factual specificity the personal involvement of Maynard, Huddleston, and Grady.

It appears that plaintiff is attempting to ask the court to find Maynard, Huddleston, and Grady liable as they "authorized, approved, encouraged, condoned, and supported" defendant Finch's actions. In his brief in response to defendants' motion, plaintiff cites *Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2008), where the Sixth Circuit concludes that "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." (*Id*. at 575).

The Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs*., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Broder v. Corr. Med. Servs., Inc.*, 2008 WL 704229, at *7 (E.D. Mich.

30

Mar. 14, 2008) (quoting *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993)).  In other words, in order to state a claim under § 1983, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant."  *Id.*; *see also Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (liability under § 1983 is predicated upon an affirmative link or connection between the defendant's actions and the claimed deprivations).

Here, plaintiff has not pled any facts showing that defendants Maynard, Huddleston, and Grady were personally involved in an alleged deprivation of his civil rights in Counts 5, 6, and 7.  As explained above, to state a claim under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added); *Baker*, 2013 WL 1720803, at *3. Plaintiff failed to plead in Counts 5, 6, and 7 that defendants Maynard, Huddleston, and Grady engaged in any active unconstitutional behavior.  And, even after learning of Finch's conduct, simply failing to act after learning of a subordinate's unconstitutional conduct will not impose liability upon a supervisory official.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).  Rather, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way *directly participated in it.*"  *Bellamy v. Bradley*,

31

729 F.2d 416, 421 (6th Cir. 1984) (emphasis added).  Accordingly, plaintiff's

failure to claim that defendants Maynard, Huddleston, and Grady were personally

involved in the alleged constitutional violations has failed to state a claim against

them in their personal capacities, and those claims should be dismissed without

prejudice.

As such, plaintiff has failed to allege any cognizable constitutional claims

against defendants Maynard and Grady, and, therefore, those defendants should be

dismissed.

### 5.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity.

Qualified immunity is an affirmative defense that shields government officials

"from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme

Court has set out "a two-step sequence for resolving government officials'

qualified immunity claims" and courts may consider the steps in any order.

*Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).  Thus, a court must decide

whether the facts, as the plaintiff has alleged, make out a violation of a

constitutional right and whether the right at issue was "clearly established" at the

time of defendant's alleged misconduct.  *Patrizi v. Huff*, 690 F.3d 459, 463 (6th

32

Cir. 2012).

As discussed in this Report and Recommendation, *supra*, the undersigned determined that plaintiff has failed to allege a violation of a constitutional right in Counts 5, 6, and 7 as to defendants Maynard, Huddleston, and Grady.  As such, those defendants are entitled to qualified immunity.  However, if viewed in a light most favorable to plaintiff, the undersigned concludes that the facts set forth in the complaint and supporting documents sets forth viable § 1983 claims against defendants Finch and Huddleston on plaintiff's other claims.  The undersigned thus recommends against a finding of qualified immunity for those two defendants.  *See e.g.*, *Sigley v. City of Parma Heights*, 437 F.3d 527, 537 (6th Cir. 2006).

## V.   RECOMMENDATIONS

For the above-stated reasons, the undersigned recommends that defendants' motion to dismiss (Dkt. 47) should be **GRANTED IN PART** and **DENIED IN PART** and  makes the following **RECOMMENDATIONS**:

The Court concludes that the complaint does not violate Rule 8(a)(2), and **RECOMMENDS** that it should not be dismissed on that basis.

The Court **RECOMMENDS** that Count 1 be **DISMISSED WITHOUT PREJUDICE**.

The Court **RECOMMENDS** that Count 5 be **DISMISSED WITHOUT**

**PREJUDICE** as to defendants Maynard, Huddleston and Grady.

The Court **RECOMMENDS** that Count 6 be **DISMISSED WITHOUT PREJUDICE** as to defendants Maynard, Huddleston and Grady.

The Court **RECOMMENDS** that Count 7 be **DISMISSED WITHOUT PREJUDICE** as to defendants Maynard, Huddleston, and Grady.

The Court **RECOMMENDS** that defendants Maynard and Grady be **DISMISSED WITHOUT PREJUDICE.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  March 4, 2016                    s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>March 4, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Okechukwu Uduko #38275, 132 Cotton Dr., Ocilla, GA 31774</u>.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov