UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OKECHUKWU UDUKO,

    Plaintiff,                      Case No. 14-cv-11041

v.                                 HONORABLE STEPHEN J. MURPHY, III

FRANK FINCH, et al.,

    Defendants.
_____/

**ORDER SUSTAINING IN PART AND OVERRULING IN PART
OBJECTIONS** (document no. 60), **ADOPTING IN PART AND REJECTING
IN PART REPORT AND RECOMMENDATION** (document no. 58), **AND GRANTING
IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** (document no. 47)

    Plaintiff pro se Okechukwu Uduko ("Uduko"), formerly incarcerated by the Federal Bureau of Prisons ("BOP"), alleges violations of his First and Fifth Amendment rights and civil conspiracy by BOP employees Frank Finch ("Finch"), Brannon Grady ("Grady"), Larry Huddleston ("Huddleston"), and Cory Maynard ("Cory Maynard") (collectively, "Defendants") in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

    The Court referred the matter to Magistrate Judge Michael J. Hluchaniuk, and the matter was later reassigned to Magistrate Judge Stephanie Dawkins Davis. Defendants moved to dismiss Uduko's complaint, the magistrate judge issued a Report and Recommendation ("Report") suggesting the Court grant in part and deny in part Defendants' motion, and Defendants filed timely objections to the Report. After examining the record and considering Defendants' objections de novo, the Court will sustain in part and overrule in part Defendants' objections, reject in part and adopt in part the Report's findings, and grant in part and deny in part Defendants' Motion to Dismiss.

**BACKGROUND**

The Report properly details the events giving rise to Uduko's action against the Defendants. Report 2–9, ECF No. 58. The Court will adopt that portion of the Report.

**STANDARD OF REVIEW**

Civil Rule 72(b) governs the review of a magistrate judge's report. A district court's standard of review depends upon whether a party files objections. The Court need not undertake any review of portions of a Report to which no party has objected. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). De novo review is required, however, if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(3). In conducting a de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

Civil Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court may only grant a Civil Rule 12(b)(6) motion to dismiss if the allegations are not "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In evaluating the motion, the Court presumes the truth of all well-pled factual assertions. *Bishop v. Lucent Techs.*, 520 F.3d 516, 519 (6th Cir. 2008). Moreover, the Court must draw every reasonable inference in favor of the non-moving party. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the element of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

Regarding Uduko's seven claims, the magistrate judge recommended that the civil conspiracy claim (Count 1) be dismissed without prejudice as to all defendants because Uduko failed to state a claim for *Bivens* conspiracy; the retaliation and discrimination claims against all defendants (Counts 5–7) be dismissed without prejudice as to Maynard, Huddleston, and Grady on qualified immunity grounds because Uduko failed to sufficiently allege a constitutional violation against them; and the remaining claims against Huddleston (Count 2) and Finch (Counts 3–7) remain as sufficiently pled, and not be dismissed on qualified immunity grounds. The Report did not, however, include any analysis to support the rejection of Finch and Huddleston's qualified immunity defense. Defendants argue that "[h]ad an analysis been performed . . . the [Report] would have concluded that Defendants are entitled to qualified immunity and that the complaint should be dismissed with prejudice in its entirety." Obj. 2, ECF No. 60. They also argue that the magistrate judge erred by dismissing claims without prejudice, instead of with prejudice. Defendants' objections are well-taken. The Court will analyze the issues below.

I. Dismissal With Prejudice

Defendants argue that the magistrate judge erred by dismissing Uduko's claims *without* prejudice, instead of dismissing them *with* prejudice. The Court agrees, and will sustain the objection. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) ("A dismissal for failure to state a claim . . . is a judgement on the merits, and is therefore done with prejudice." (citation and internal quotation marks omitted)). The Court will therefore adopt the Report's dismissal of Count 1 as to all defendants and Counts 5–7 against Maynard, Huddleston, and Grady, but will instead dismiss those claims with prejudice.

Maynard and Grady will therefore be dismissed from the instant action with prejudice.

II.     Qualified Immunity

Qualified immunity shields federal officials from liability for civil damages unless a plaintiff can show that (1) the defendant violated a constitutional right (2) that was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).

   A.    Fifth Amendment Claims

The Court construes the discrimination aspect of Counts 2 through 7 as alleging a Fifth Amendment equal protection violation.[1] The purpose of the equal protection clause is to protect against "invidious discrimination among similarly-situated individuals," and ensure that "all similarly-situated people are treated alike." *Dog Pound, LLC v. City of Monroe, Mich.*, 558 F. App'x 589, 592 (6th Cir. 2014). The threshold element is disparate treatment, and once that is shown, the classification used by the government officials determines which analysis should be applied. *Id.*

> In other words, unless the plaintiff shows that a law (as written or as enforced) treats people who are in the same position differently, a successful equal-protection claim cannot be made. Should that threshold be met, a court will then proceed to review the government action under the default "rational basis" standard, unless the plaintiff claims a government action that "infringes on a class of people's fundamental rights [or] targets a member of a suspect class," in which case the court employs strict scrutiny.

---

[1] The approach to Fifth Amendment equal protection claims is the same as the approach to Fourteenth Amendment equal protection claims. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

As Defendants argue in their motion to dismiss, the Supreme Court has found that prisoner classification and eligibility for correctional programs within the prison setting are not subject to due process protections. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

*Id.* Throughout his Complaint, Uduko alleges variations of the following statement:

> [T]he adverse actions . . . [were] motivated at least in part by plaintiff's exercise of his protected conducts and on the basis of plaintiff's race (Black) and national origin (Nigeria) and that, but for, plaintiff's . . . race and national origin, defendant [Finch, Maynard, Huddleston, and/or Grady] would not have taken the retaliatory and discriminatory actions against plaintiff.

Compl. 30, 32–33, 35–36, 38–39, 42–43, 46–47, 49, 51, ECF No. 1. Because Uduko alleges that he is being discriminated against based on his race, the Court would employ strict scrutiny.[2] But throughout his complaint, Uduko provides no facts to support the allegations. Indeed, as Defendants argue, Uduko only once compares himself to a similarly-situated prisoner of another race:

> [T]he fact that I was transfe[r]red to another department and a different shift further shows the extent of [Finch's] animus against me . . . Inmate Gary Kedzierski . . . is white and I am black and a Nigerian . . . I was terminated from my Unicor job and no sanction was given to the inmate Kedzierski initially and after I hand delivered a written complaint . . . [Finch and Maynard] called inmate Kedzierski to Maynard's office . . . and told him that they will have to take a grade from him for 30 days . . . [and later] called Gary Kedzierski and told him that his grade will now be taken for 90 days and reviewed after 90 days.

Compl. 91, ECF No. 1. That reference alone is insufficient to show that Uduko and Kedzierski were similarly situated.

"[B]road and conclusory allegations of discrimination cannot be the basis of a

---

[2] Because Uduko also alleges in other areas of his Complaint that he is being treated differently "without any rational basis for such disparate treatment," *see Id.* at 32–33, it is possible that he bases his claim of disparate treatment on his status as a prisoner, in which case the Defendants' acts would be subject to rational basis review. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (holding that prisoners are not a suspect class); *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.").

5

complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims," and "a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted). The Court finds that Uduko's claims are the kind of "bare assertions" and "formulaic recitation[s] of the elements" that the heightened pleading standard is meant to disallow. *See Ashcroft*, 556 U.S. at 681 (2009). Because Uduko fails to show that Defendants violated his equal protection rights, Defendants are entitled to qualified immunity from the discrimination aspect of Counts 2–7.

    B.    First Amendment Claims

The Court construes the retaliation aspect of claims 2 through 7 as alleging a First Amendment violation. To establish a First Amendment retaliation claim, Uduko must show that (1) he engaged in protected conduct; (2) Defendants took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) Defendants' adverse action was motived at least in part by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"[A]n inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but only to the extent that the underlying claims have merit." *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) (citation and internal quotation marks omitted). Uduko bases his retaliation claims at least in part on his filing of administrative grievances against Defendants, which Defendants concede constituted protected conduct. Mot. Dism. 20, ECF No. 47. The Court therefore finds that Uduko properly alleges the first element of his retaliation claims to the extent that Defendants

retaliated against him for filing administrative grievances.[3]

Courts consider the context of the allegation when determining whether the second element is met:

> [A]n adverse action is one that would deter a person of ordinary firmness from the exercise of the right at stake—here, the filing of grievances or lawsuits against prison officials. Whether an act is sufficiently adverse varies based on context. The context here is a prison; and prisoners may be required to tolerate more than average citizens before an action taken against them is considered adverse. Even so, however, an act need not be egregious to be adverse.

*LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (internal citations and quotation marks omitted). Put simply, "this threshold is intended to weed out only inconsequential

---

[3] In addition to his administrative grievances, Uduko cites in his Complaint several types of informal complaints that he lodged, and includes them alongside the administrative grievances against which the Defendants allegedly retaliated, including: submitting inmate requests to Finch and Huddleston; refusing to sign disciplinary warning reports, evaluation reports of various performance levels, a document regarding his removal from the overtime list, and a form regarding his removal from the Welding Apprenticeship Program and the reduction of his grade level; and his success in beating a false incident report and having the report expunged from his record. Compl. 21–22, ECF No. 1. To the extent that Uduko invokes First Amendment protection for these acts, "the general rule—that a prison inmate's speech is not protected by the First Amendment if it is 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system'—governs his claims." *Griffin v. Berghuis*, 563 F. App'x 411, 415 (6th Cir. 2014) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Here, Uduko does not argue that Defendants' actions were unreasonable or unrelated to legitimate penological interests, including the interest of maintaining a functioning, efficient prison employment system. But "[e]ven if the court assumes protected status for informal complaints, it is unclear whether a prisoner's complaints made as employee are protected by the First Amendment." *Treadwell v. Almy*, No. 1:10-cv-560, 2013 WL 6668680, at *7 (W.D. Mich. Dec. 18, 2013). In *Treadwell*, as here, a prisoner claimed protected status for complaints he made as a prisoner/employee, and reasoned that "[n]either the Supreme Court nor the Sixth Circuit has 'clearly established' the protected status of speech by prisoners who speak as employees." *Id.* at *8. The Court agrees, and finds that Defendants are entitled to qualified immunity to the extent that the protected status of the complaints that Uduko lodged as a prisoner/employee outside the formal administrative grievance structure was not "clearly established" such that a reasonable person in either Finch or Huddleston's position would know that the conduct Uduko informally complained of was unlawful.

7

actions." *Thaddeus-X*, 175 F.3d at 398. Because the adverseness inquiry is an objective inquiry, it neither depends upon how the particular plaintiff reacted, nor requires a showing of actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Although "[a] prisoner has no constitutional right to prison employment or a particular prison job," *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) (citation omitted), the Sixth Circuit has suggested that termination of prison employment may constitute adverse action in the context of a retaliation claim. *Walker v. Brewer*, No. 1:13-cv-349, 2014 WL 1117835, at *2 (W.D. Mich. Mar. 20, 2014) (citing *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009) and *Dobbins v. Craycraft*, 423 F. App'x 550 (6th Cir. 2011)). Accordingly, the Court finds that Uduko has sufficiently pled the second element of a retaliation claim to the extent that he alleges that Defendants' retaliation led to the termination of his employment.

The third element's causation inquiry "centers on the defendant's motive. Because direct evidence of retaliatory intent is rare, circumstantial evidence may be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014) (citations and internal quotations marks omitted). Such evidence can include "the temporal proximity between the prisoner's protected conduct and the official's adverse action," but the Sixth Circuit "has been reluctant to find that such evidence alone establishes retaliatory motive." *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). Generally, courts should look at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). Nevertheless, Uduko must point to "specific, nonconclusory allegations reasonably linking [his] speech" to Defendants' actions. *Id.* at 400.

In Count 2, Uduko claims Huddleston retaliated by writing a false disciplinary warning report against him on March 16, 2011. Compl. 32–34, ECF No. 1. Uduko claims that three days after filing a grievance against Huddleston and Finch, Huddleston brought him into the General Foreman's Office and said, "I see you like to push paperwork, we will see you and I who can push more than the other," and then gave Uduko the disciplinary warning. *Id.* at 8. Huddleston later told Uduko, "if you insist in filing a grievance which I will be asked to give a response, I will have you in the compound before the time to respond to your grievance." *Id.* at 9. When paired with the temporal proximity between the disciplinary warning and Uduko's protected conduct of filing an administrative grievance three days earlier, these statements are sufficient to state a claim of retaliation.

In Count 3, Uduko claims Finch retaliated by writing an average evaluation report on March 21, 2011, and a false disciplinary report the next day. Compl. 34–37, ECF No. 1. Uduko specifically mentions the following comments from Finch after he reviewed Uduko's performance of an assigned task:

> [W]hat is this . . . you feel I should have given you a change in grade but *instead of talking to me about it, you decided to file papers against me as if you are the only person who knows how to file papers*, how can you explain this weld? It is unacceptable to me, . . . *you think you are the only person who can put things in writing*, every body says you are my best and most experienced welder and yet you are giving me this substandard performance, well, hence we are going to start documenting things significant and insignificant, and I am going to write you a disciplinary warning and the next time, reduce your grade.

*Id.* at 11 (emphasis added). Finch then gave Uduko the disciplinary warning. When paired with the temporal proximity between the average evaluation report, the disciplinary warning, and Uduko's protected conduct of filing an administrative grievance nine days earlier, that statement is sufficient to state a claim of retaliation.

Uduko alleges that Counts 4–7 are sufficiently pled because he presents, as circumstantial evidence, "the fact that defendant Finch used the false disciplinary warning report by [Huddleston] on March 16, 2011, the average evaluation report by [Finch] on March 21, 2011, [and] the false disciplinary warning report by [Finch] on March 22, 2011 to justify" the actions alleged in Counts 4–7.[4] Compl. 40, ECF No. 1. *See also* Compl. 44, 47–48, 52, ECF No. 1. Because the Court will uphold Counts 2 and 3 as sufficiently pled based on those reports, and must accept as true Uduko's claim that Finch relied on those reports in making the decisions alleged in Counts 4–7, the Court finds that the totality of the circumstances support an inference of retaliatory motive, and that those claims are sufficiently pled.

Finally, Defendants argue that they are entitled to qualified immunity because it would not be clear to a reasonable BOP employee that his or her conduct was unlawful," and as a result, "Defendants did not violate a clearly established constitutional right." Mot. Dism. 25, ECF No. 47. The Court disagrees. It is clearly established that prisoners have a First Amendment right to file administrative grievances in prison, and to be free from retaliation. *Sims v. Rewerts*, No. 07-12646, 2008 WL 2224132, at *10 (E.D. Mich. May 29, 2008) (citing *Herron v. Harrison*, 203 F.3d 410 (6th Cir. 2000) and *Thaddeus-X*, 175 F.3d at 394).

---

[4] In Count 4, Uduko claims Finch retaliated by removing him from an overtime list on August 24, 2011, writing a false disciplinary report on the same day, and refusing to allow him to participate in training programs. Compl. 37–40, ECF No. 1. In Count 5, Uduko claims that Finch retaliated by writing a false disciplinary report on September 8, 2011, removing Uduko from an apprenticeship program the next day, and reducing Uduko's grade by one level. *Id.* at 41–45. In Count 6, Uduko claims Finch retaliated by writing a poor work evaluation. *Id.* at 45–48. In Count 7, Uduko claims Finch retaliated by depriving him of a promotion, and terminating his job assignment. *Id.* at 48–53.

## CONCLUSION

As a result of the instant order, the Court will dismiss with prejudice defendants Grady and Maynard, and only allow the following claims to proceed against Huddleston and Finch:

- Uduko's First Amendment retaliation claim in Count 2 against Huddleston.
- Uduko's First Amendment retaliation claims in Counts 3–7 against Finch.

For the reasons stated above, and in the manner described below, the Court will sustain in part and overrule in part Defendants' objections, reject in part and adopt in part the Report's findings, and grant in part and deny in part Defendants' Motion to Dismiss.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' objections (document no. 60) are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that the magistrate judge's Report and Recommendation (document no. 58) is **ADOPTED IN PART AND REJECTED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (document no. 47) is **GRANTED IN PART AND DENIED IN PART** as follows:

- **GRANTED** as to Count 1 against all defendants, who are hereby **DISMISSED WITH PREJUDICE** as to Count 1.
- **GRANTED IN PART** as to Count 2 against Huddleston. The Fifth Amendment claim within Count 2 is **DISMISSED WITH PREJUDICE** as to Huddleston.
- **GRANTED IN PART** as to Counts 3–7 against Finch. The Fifth Amendment claims within Counts 3–7 are **DISMISSED WITH PREJUDICE** as to Finch.
- **GRANTED** as to Counts 5–7 against Huddleston, Grady, and Maynard, who are hereby **DISMISSED WITH PREJUDICE** as to Counts 5–7.
- **GRANTED** as to all claims against Grady and Maynard, who are hereby **DISMISSED WITH PREJUDICE** from this action.

- **DENIED** in all other respects.

**SO ORDERED**.

                                        s/Stephen J. Murphy, III  
                                        STEPHEN J. MURPHY, III  
                                        United States District Judge

Dated: March 24, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 24, 2016, by electronic and/or ordinary mail.

                                        s/Carol Cohron  
                                        Case Manager